**UNITED STATES of America, Appellee,**

v.

**Robert McCALVIN, a/k/a Reginal Mack, Appellant.**

**No. 79–1672.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 8, 1979.

Decided Nov. 15, 1979.

Thomas M. Bradshaw, Acting Federal Public Defender and Philip M. Moomaw, Asst. Federal Public Defender, Springfield, Mo., for appellant.

Ronald S. Reed, Jr., U.S. Atty., Kansas City, Mo., and Michael A. Jones, Asst. U.S. Atty., Springfield, Mo., for appellee.

Before GIBSON, Chief Judge, and ROSS and STEPHENSON, Circuit Judges.

PER CURIAM.

Robert McCalvin appeals from his conviction pursuant to a jury verdict finding him guilty on all counts of a three-count indictment. Count I of the indictment charged possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1)

(1976); Count II charged assault by wounding within the territorial jurisdiction of the United States in violation of 18 U.S.C. § 113(d) (1976); and Count III charged destruction of Government property by kicking a camera and tripod and causing damages of less than one hundred dollars in violation of 18 U.S.C. § 1361 (1976).

On Appeal, McCalvin asserts that the court below erred (1) in failing to grant his motion for judgment of acquittal on Count III and in permitting the Government to reopen its case, (2) in refusing his offer of proof that a Government policy precluded prosecution of cases involving possession or sale of less than fifty pounds of marijuana, and (3) in failing to grant his motion for judgment of acquittal as to Counts II and III on the grounds that the evidence was insufficient to prove beyond a reasonable doubt that he acted knowingly and willfully. Jurisdiction in the District Court was predicated in 18 U.S.C. § 3231 (1976), and jurisdiction in this court lies on the basis of 28 U.S.C. § 1291 (1976).

I

Stanley M. Cox, a private in the United States Army stationed at Fort Leonard Wood, Missouri, testified that while waiting at a bus station in St. Louis en route to Fort Leonard Wood he met appellant McCalvin, who rode with him to the army base. When they arrived, Cox rented a room in the civilian guest house for McCalvin's use and occupancy. The next day, Cox met with McCalvin at the guest house and was shown tinfoil packets referred to by McCalvin as "nickel bags" of marijuana which he attempted to sell. Other persons at the base also testified that McCalvin solicited them regarding the purchase of drugs, and engaged in some drug dealings. Because of information suggesting drug traffic in the civilian guest house supplied by a cleaning maid, the C.I.D. (Criminal Investigation Division of the U.S. Army) placed Sergeant Thompson on surveillance duty at the guest house on the morning of May 3, 1979. Sgt. Thompson observed McCalvin leave his room carrying a white pillowcase which appeared stuffed with objects. Meanwhile, M.P. Sgt. Huff had talked with a female soldier about her observations of drug traffic in the guest house, and along with a C.I.D. special agent drove to the house to talk to Sgt. Thompson. Sgt. Thompson advised them of his observation regarding the white pillowcase, and that he had overheard McCalvin request a taxi to the main PX building. Sgt. Huff, the special agent and two female soldiers drove to the main PX building where McCalvin was spotted carrying the white pillowcase. One of the female soldiers advised Sgt. Huff that McCalvin was the man who had the narcotics. Sgt. Huff then approached the defendant, identified himself, and asked McCalvin for identification. When McCalvin stated that he had left his identification at the guest house, Sgt. Huff told him that he would have to detain him until his identity could be verified because he was suspected of possessing marijuana. Sgt. Huff queried McCalvin about what the pillowcase contained, and when he responded that it contained only dirty laundry, Sgt. Huff requested if he could look inside. McCalvin consented. Sgt. Huff saw not only dirty laundry, but a rolled-up brown paper bag, and asked McCalvin what was in the bag. McCalvin replied, "Personal items," and Sgt. Huff requested to look inside the bag. Thereupon McCalvin accused Sgt. Huff of harassment and stated that he was not going to be detained further. He began to walk away and refused to stop after several oral requests. Sgt. Huff pursued and grabbed him by his jacket collar. McCalvin grabbed Sgt. Huff's tie, throwing him off balance, and fled still holding the white pillowcase. McCalvin was apprehended in the ensuing chase, and Sgt. Huff, upon retrieving the pillowcase, found a substance he believed to be marijuana inside the brown paper bag. An inventory of the contents revealed marijuana in thirty-nine plastic bags and two tinfoil packets.

McCalvin was taken to the C.I.D. office where he was subjected to a standard weapons and inventory search, but when the agents attempted to fingerprint and photograph McCalvin, he resisted, and in the ensuing fight bit one of the agents on the arm and kicked the camera, breaking it into

several pieces. McCalvin's resistance evidently in part stemmed from his belief that he was entitled to an attorney before he was fingerprinted or photographed. Initially at the station he was advised of his rights and stated that he wanted a lawyer and did not want to be questioned. After this, he was told that he would be fingerprinted and photographed, whereupon he objected and the fight ensued.

Following his arrest on May 3, 1979, McCalvin remained in custody for failure to tender bail. His trial by jury began June 27, 1979, and the next day before lunch the Government rested its case. After the luncheon recess, prior to the trial resuming, the Government requested that it be allowed to reopen its case for the limited purpose of proving that the camera and tripod, which had already been admitted into evidence without objection, were the property of the United States Government. The court permitted the Government to reopen its case for this limited purpose. On June 28, 1979, the jury returned a verdict of guilty on all three counts. The District Court, on July 26, 1979, sentenced defendant on Count I to the custody of the Attorney General for a period of one year to be followed by a two-year special parole term, and six months' imprisonment each on Counts II and III, all sentences to run consecutively. We affirm.

## II

McCalvin argues that the Government failed to prove a violation of 18 U.S.C. § 1361 (1976) because it presented insufficient evidence on the essential element of whether the camera or tripod were Government property. At the close of the Government's case, the defendant moved for a judgment of acquittal on Count III for this reason. Over objection, the court permitted the Government to reopen its case, and Special Agent Hamilton, admittedly not a property officer, testified that he had been in the Fort Leonard Wood C.I.D. Office since June of 1977, during which time he and others used the camera and tripod, and that those items were Government property. He testified that during the course of his duties he had participated in and observed inventories of the equipment assigned to that office, and that although he personally had not inventoried the camera and tripod, they had been in the physical possession of the C.I.D. Office, and had been checked off in the property book as property of the United States Government. McCalvin argues that this evidence was insufficient to prove ownership by the United States Government beyond a reasonable doubt, and that the District Court abused its discretion by permitting the Government to reopen its case.

In *Lucas v. United States*, 343 F.2d 1 (8th Cir.), *cert. denied*, 382 U.S. 862, 86 S.Ct. 125, 15 L.Ed.2d 100 (1965), we noted that the question of reopening a case after a side rests is within the sound discretion of the trial court. The trial court must consider whether the evidence would cause surprise to the defendant, whether the defendant is given adequate opportunity to meet the proof, and whether the evidence was more detrimental to the defendant because of the order in which it was introduced. McCalvin argues merely that the evidence caused him unfair surprise. The District Court, however, cannot be said to have abused its discretion. Agent Hamilton was listed in the Government's list of proposed witnesses for trial, and McCalvin has not shown any prejudice in his opportunity to meet the proof.

We also hold that the District Court did not err in refusing to grant the judgment of acquittal. The evidence showed that the United States Army exercised dominion and control over the camera and tripod and that they had been subject to the practical usage of Government agents for a period of time of at least two years. *See United States v. Blunt*, 558 F.2d 1245, 1246–47 (6th Cir. 1972). Furthermore, defense counsel did not make a timely objection to the introduction into evidence of the camera or tripod.

## III

Appellant argues that the trial court erred in refusing to allow him to offer proof of a Government policy not to prosecute cases involving possession or sale of marijuana when less than fifty pounds is in-

volved. He argues that this policy is relevant and material to the essential element of possession with intent to distribute.

We find, however, that a policy statement by the United States cannot be considered reflective of the defendant's state of mind or probative of his intention to distribute; nor can a policy statement by an executive agency or officer nullify a legislative enactment. The evidence clearly established that McCalvin intended to distribute marijuana.

IV

██ McCalvin contends that the evidence was not sufficient to prove that he acted knowingly and willfully in biting the C.I.D. agent and damaging the camera, because he was acting under the mistaken but innocent belief that he was entitled to a lawyer prior to fingerprinting or photographing.

The evidence, however, clearly establishes that McCalvin acted voluntarily and intentionally in wounding the agent and destroying the camera. The mistaken belief that he had a right to consult with counsel prior to being photographed or fingerprinted does not excuse his violent conduct.

Judgment affirmed.