In the
United States Court of Appeals
For the Seventh Circuit

Nos. 01-3680 and 01-3681

United States of America,

Plaintiff-Appellee,

v.

Bonnie L. Urfer and Michael R. Sprong,

Defendants-Appellants.

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 00 CR 100--John C. Shabaz, Judge.

Submitted February 25, 2002--Decided April 26, 2002

  Before Posner, Easterbrook, and Williams,
Circuit Judges.

  Posner, Circuit Judge.  The U.S. Navy has
an ELF (extremely low frequency) system
that broadcasts communications to
submerged U.S. submarines that are armed
with intercontinental ballistic missiles
fitted with nuclear warheads. The ELF
facility in Wisconsin (there is another
in Michigan) includes a 28-mile-long
antenna strung on wooden poles on federal
government land. Urfer and Sprong, the
defendants in this case, sawed down three
of the poles, disabling the facility for
24 hours. They fastened literature
denouncing nuclear-armed submarines on
the poles and spray-painted "Nuremberg"
on one of them, a reference to the fact
that the Nuremberg Tribunal punished
transgressions of international law by
Germans who were acting in conformity
with domestic law. United States v.
Sisson, 399 U.S. 267, 271 (1970); United
States v. Maxwell, 254 F.3d 21, 29 (1st
Cir. 2001). Tried for "willfully
injur[ing]" federal government property
in violation of 18 U.S.C. sec.sec. 1361,
1362, the defendants defended on the
ground that a Michigan lawyer named
Anabel Dwyer had advised them that they
were authorized to destroy the ELF system
because it violates international law.
The judge instructed the jury that it
could not convict the defendants if they

"honestly believed their attorney's advice and acted in honest ignorance of their legal duties." The jury, apparently not believing that the defendants had "acted in honest ignorance of their legal duties," convicted them. They received light sentences--six months and two months in prison, respectively, plus they must pay restitution of several thousand dollars for the damage they caused the ELF facility. They argue that the judge should not have instructed the jury that it could consider the reasonableness of the lawyer's advice and should have permitted the defense to present witnesses (other than attorney Dwyer, who did testify) who would testify about the dangers to world peace created by the Trident submarine (which the defendants regard as a first-strike weapon), about international law relating to nuclear weapons, about the history of civil disobedience, and about kindred subjects bearing, they contend, however remotely on their efforts to disable the ELF system.

These arguments have no merit. To begin with, the reasonableness of a lawyer's advice is indeed relevant to a determination of willfulness. United States v. Benson, 941 F.2d 598, 614-15 (7th Cir. 1991), amended, 957 F.2d 301 (7th Cir. 1992); United States v. Monteleone, 804 F.2d 1004, 1011 (7th Cir. 1986). The Supreme Court has made this clear in the cognate area of criminal prosecutions of tax protesters. "[T]he more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be nothing more than simple disagreement with known legal duties imposed by the tax laws and will find that the Government has carried its burden of proving knowledge." Cheek v. United States, 498 U.S. 192, 203-04 (1991); see also United States v. Hilgeford, 7 F.3d 1340, 1344 (7th Cir. 1993); United States v. Barnett, 945 F.2d 1296, 1299 (5th Cir. 1991); United States v. Lussier, 929 F.2d 25, 31 (1st Cir. 1991) (per curiam); United States v. Mann, 884 F.2d 532, 537 n. 3 (10th Cir. 1989). There are almost a million lawyers in the United States. Not all of them are competent; not all are honest. If unreasonable advice of counsel could automatically excuse criminal behavior, criminals would have a straight and sure path to immunity.

As for the judge's refusal to allow the defendants to turn the trial into a referendum on U.S. defense strategy, international law, and civil disobedience, it was well within his discretion. "A judge may, and generally should, block the introduction of evidence supporting a proposed defense unless all of its elements can be established." United States v. Haynes, 143 F.3d 1089, 1090 (7th Cir. 1998). (For the application of this principle to two cases that are much like the present one, see United States v. Maxwell, supra, 254 F.3d at 30, and United States v. Komisaruk, 885 F.2d 490, 492-94, 495 (9th Cir. 1989).) Obviously, disagreement with U.S. defense policy and moral disapproval of a law are not defenses to violating the law, and they are related tenuously if at all to the sincerity of the defendants' belief that they were engaged in a legally privileged activity. The introduction of such evidence would have lengthened the trial and confused the jury and done little for the defendants since the evidence in question was a pale cousin of the evidence on which they primarily relied--the advice of a lawyer. See Fed. R. Evid. 403; cf. Hamling v. United States, 418 U.S. 87, 127 (1974); United States v. Pulido, 69 F.3d 192, 204 (7th Cir. 1995); United States v. Flitcraft, 803 F.2d 184, 185-86 (5th Cir. 1986).

The only part of the excluded evidence that was clearly related to the charges was the part that concerned international law, specifically the argument that the defendants' trespass and destruction of government property were privileged by that law; but questions of law are for the judge, not the jury, to decide. E.g., Gramercy Mills, Inc. v. Wolens, 63 F.3d 569, 571 (7th Cir. 1995); Desnick v. American Broadcasting Cos., 44 F.3d 1345, 1349 (7th Cir. 1995); United States v. Fawaz, 881 F.2d 259, 261 (6th Cir. 1989). This includes questions of international law. McKesson HBOC, Inc. v. Islamic Republic of Iran, 271 F.3d 1101, 1111 (D.C. Cir. 2001); United States ex rel. Saroop v. Garcia, 109 F.3d 165, 167 (3d Cir. 1997); Hilao v. Estate of Marcos, 103 F.3d 789, 794 (9th Cir. 1996); Friedrich v. Friedrich, 78 F.3d 1060, 1064 (6th Cir. 1996); Echeverria-Hernandez v. INS, 923 F.2d 688, 692,

vacated on other grounds, 946 F.2d 1481 (9th Cir. 1991) (en banc).

The only error committed at trial was in the defendants' favor. No advice of counsel instruction should have been given. There is no such thing as an "advice of counsel" defense. United States v. Benson, supra, 941 F.2d at 614; Markowski v. SEC, 34 F.3d 99, 104-05 (2d Cir. 1994); Rea v. Wichita Mortgage Corp., 747 F.2d 567, 576 (10th Cir. 1984); United States v. Civella, 666 F.2d 1122, 1126 (8th Cir. 1981); United States v. Conforte, 624 F.2d 869, 876 (9th Cir. 1980). What is true, as the cases that we have just cited explain, is that if a criminal statute requires proof that the defendant knew he was violating the statute in order to be criminally liable for the violation, and it is unclear whether the statute forbade his conduct, the fact that he was acting on the advice of counsel is relevant because it bears on whether he knew that he was violating the statute. See also United States v. Louderman, 576 F.2d 1383, 1390 (9th Cir. 1978). In this case, however, the defendants do not deny that they were violating the statute. They knew it was a crime to destroy government property. Their argument is that they were advised by counsel that the statute could not be applied to them.

We do not see how such an argument can operate as a defense in a case involving the destruction of property. It is true that the statute punishes only "willful" damage to government property. As has often been remarked, the meaning of "willful" varies with the context. E.g., Spies v. United States, 317 U.S. 492, 497 (1943); United States v. Gage, 183 F.3d 711, 719 (7th Cir. 1999) (concurring opinion). In the case of criminal laws that codify a society's basic moral prohibitions, which is to say prohibitions of things that are bad in themselves ("mala in se"), a finding of willfulness requires proof only that the defendant acted deliberately, not that he knew that his act was illegal--that isassumed. E.g., United States v. Starks, 157 F.3d 833, 837-39 (11th Cir. 1998); United States v. O'Hagan, 139 F.3d 641, 647 (8th Cir. 1998); United States v. Fierros, 692 F.2d 1291, 1295 (9th Cir. 1982); Williams v. North Carolina, 325 U.S. 226, 243 (1945) (concurring

opinion). In such cases, as Judge Learned Hand explained in American Surety Co. v. Sullivan, 7 F.2d 605, 606 (2d Cir. 1925), "the word 'willful,' even in criminal statutes, means no more than that the person charged with the duty knows what he is doing. It does not mean that, in addition, he must suppose that he is breaking the law." In contrast, in the case of laws that attach criminal punishment to conduct that not everyone knows is criminal ("mala prohibita"), such as the failure to pay a particular tax or register a gun, a finding of willfulness requires proving not only that the defendant acted deliberately but also that he knew he was violating the law. E.g., Ratzlaf v. United States, 510 U.S. 135, 141, 144-46 (1994); Cheek v. United States, supra, 498 U.S. at 199-200, 201-02; United States v. Benson, supra, 941 F.2d at 613. "Willfulness is often required where a statute outlaws conduct commonly thought to be lawful. In some measure, the willfulness requirement reverses the usual rubric that ignorance of the law is no defense." United States v. Andrade, 135 F.3d 104, 108 (1st Cir. 1998).

Destroying other people's property is malum in se, and thus is willful provided only that the defendant knows that he's destroying another person's property without the person's authorization. Morissette v. United States, 342 U.S. 246, 270-71 (1952); United States v. McCalvin, 608 F.2d 1167, 1171 (8th Cir. 1979) (per curiam); People v. Datema, 533 N.W.2d 272, 278 n. 15 (Mich. 1995). The defendants' conduct obviously was willful in that sense. They had no more right to saw down the antenna poles because they thought the statute might be invalid as applied to them than they would be entitled to murder the commander of the ELF facility if advised by lawyer Dwyer that the federal murder statute could not validly be used to punish a murder committed for the purpose of disrupting the facility. Which is to say (though this is gilding the lilly) that the lawyer's advice to these defendants was indeed unreasonable. Even if it were contrary to international law for a nation to possess nuclear weapons, domestic law could properly and does make it a crime "to correct a violation of international law by destroying government property." United States v.

Allen, 760 F.2d 447, 453 (2d Cir. 1985); see also United States v. Maxwell, supra, 254 F.3d at 29-30; United States v. Komisaruk, supra, 885 F.2d at 497; United States v. Montgomery, 772 F.2d 733, 737 (11th Cir. 1985). It would be especially bizarre to suppose that antiwar activists have a right to disable the United States from using nuclear weapons when many other nations, not plagued by such activists, possess these weapons.

Affirmed.