**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 25, 2007[*]
Decided May 2, 2007

**Before**

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 06-2831

| | |
|---|---|
| NEIL T. NOESEN, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District of |
| | Wisconsin |
| v. | |
| | No. 06-C-071-S |
| MEDICAL STAFFING NETWORK, | |
| INC., et al., | John C. Shabaz, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Neil Noesen, a pharmacist, refuses on religious grounds to fill prescriptions for birth control. He brought this *pro se* lawsuit against Medical Staffing Network, Inc. ("MSN"), Wal-Mart Stores, Inc., and the State of Wisconsin, alleging that they discriminated against him on the basis of his religion by refusing to exempt him from having any contact with customers who ask to have such prescriptions filled. The district court resolved all claims against Noesen. The only issues on appeal concern Noesen's contention that the defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., when Wal-Mart refused to accede to

---

[*]After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

his demand that it insulate him from any interaction, no matter how brief, with any person seeking birth control. We affirm the district court's judgment.

The material facts are undisputed. Wal-Mart's pharmacy in Onalaska, Wisconsin assists hundreds of customers with pharmacy-related requests and fills an average of 250 prescriptions daily. To meet the high volume of customer requests, pharmacists and pharmacy technicians share customer-service duties. For example, both pharmacists and technicians must assist walk-in customers and answer telephone inquiries from customers, physicians, hospitals, clinics, insurance companies, and other pharmacies. Technicians typically input prescription information into the computer system and verify insurance, while pharmacists have sole responsibility for checking all prescriptions and handing the medications to retail customers. Approximately 10% of the pharmacy's customer volume is related to requests for birth control.

In July 2005 Wal-Mart asked MSN, a health care staffing provider, for temporary assistance in its Onalaska pharmacy. MSN recommended Noesen. Noesen, a Roman Catholic, is licensed by the State of Wisconsin to practice pharmacy, but the state licensing authority restricted his license in 2004 because of his refusal to fill, or refer to another pharmacy, a woman's prescription for contraception. Under the restriction, Noesen must notify potential employers in writing of the pharmacy services he will not perform and the steps he will take to ensure that a patient's access to medication remains unimpeded.

Before starting work at the Onalaska pharmacy, Noesen wrote to Wal-Mart and explained that, due to his religious convictions, he would "decline to perform the provision of, or any activity related to the provision of contraceptive articles," including "complete or partial cooperation with patient care situations which involve the provision of or counsel on contraceptive articles." Robert Overton, a pharmacist and acting supervisor of the Onalaska pharmacy, understood Noesen's limitations to mean that he would not fill prescriptions for birth control, and agreed to accommodate that limitation. Overton relieved Noesen from: filling prescriptions for birth control, taking orders for birth control from customers or physicians, handing customers birth control medication, and performing checks on birth control orders. Overton also arranged for birth control prescriptions to be sorted into a separate basket so that Noesen would not have to touch the items and ensured that someone would be available to fill orders and respond to customer inquiries concerning birth control.

Within days Overton realized that, even with these accommodations, Noesen refused to perform general customer-service duties if they involved even briefly talking to customers seeking contraception. For example, when Noesen answered telephone calls from customers or physicians attempting to place orders for birth

control, Noesen put them on hold and refused to alert other pharmacy staff that someone was holding. Similarly, when customers came to the counter with birth control prescriptions, Noesen walked away and refused to tell anyone that a customer needed assistance. Noesen explained that if required to speak to customers seeking birth control, he would always counsel them against it and refuse to fill their prescriptions. Noesen rejected Overton's offer that Noesen assist only customers that were not of childbearing age or only male customers. He insisted that the only acceptable accommodation was to relieve him of all counter and telephone duties unless customers were first pre-screened by some other employee to ensure that they were not seeking birth control. Overton agreed that he and the pharmacy intern could assist all walk-in customers but due to high caller volume Noesen, like all other staff, needed to answer the telephones, although he could refer callers with birth control issues to others. Noesen rejected this accommodation.

On his fifth day at the Onalaska pharmacy, after Noesen refused his work assignment with the modified accommodations, Overton fired Noesen. But Noesen refused to leave the store. He began lecturing customers about Wal-Mart's discriminatory practices and had to be carried out by police. Based upon his conduct at Wal-Mart, MSN also fired Noesen.

The district court resolved all claims in favor of the defendants. The court concluded that Noesen had not alleged a failure to accommodate claim against MSN and that "Wal-Mart gave [Noesen] the exact accommodation that he sought." The court also explained that, after receiving Wal-Mart's initial accommodation, Noesen wanted an additional accommodation—avoiding any situation where he might interact with a customer seeking birth control—to which he was not entitled. As to Noesen's separate claims against the State of Wisconsin for failing to enact a rule that would allow him to refuse to distribute birth control, the district court dismissed them, stating generally that it lacked jurisdiction.

On appeal Noesen first contends that a genuine issue of material fact exists concerning whether Wal-Mart and MSN reasonably accommodated his religious beliefs because a jury could find that his proposed accommodation was reasonable. We review the district court's grant of summary judgment de novo, viewing all facts

and inferences in Noesen's favor.[1]  *See Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007).

Title VII of the 1964 Civil Rights Act requires employers to make reasonable accommodations for their employees' religious beliefs and practices unless doing so would result in undue hardship to the employer.  42 U.S.C. § 2000e-2; *Reed v. Great Lakes Cos.*, 330 F.3d 931, 934-35 (7th Cir. 2003).  A reasonable accommodation is one that "eliminates the conflict between employment requirements and religious practices." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70 (1986); *see Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 475 (7th Cir. 2001).  Noesen's religious beliefs (and his interpretation of the Wisconsin Administrative Code) require him to avoid participating in the distribution of birth control "in any way."  Although Wal-Mart attempted to accommodate him, Noesen says that the conflict between his employment obligations and religious beliefs was not eliminated.  And, he insists, the conflict could have been eliminated in only one way:  by Wal-Mart relieving him of all counter and telephone duties.  Noesen, however, was not entitled to that accommodation if it would work an undue hardship on Wal-Mart. *See* 42 U.S.C. § 2000e(j); *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977); *Endres v. Ind. State Police*, 349 F.3d 922, 925 (7th Cir. 2003).  Undue hardship exists when a religious accommodation would cause more than minimal hardship to the employer or other employees.  *Trans World Airlines, Inc.*, 432 U.S. at 84; *Endres*, 349 F.3d at 925.

Wal-Mart contends, and we agree, that Noesen's proposed accommodation would impose an undue hardship.  It is undisputed that Wal-Mart's relieving Noesen of all telephone and counter duties would have shifted his share of initial customer contact to other pharmacy staff.  Yet an accommodation that requires other employees to assume a disproportionate workload (or divert them from their regular work) is an undue hardship as a matter of law.  *See Bruff v. N. Miss. Health Servs., Inc.*, 244 F.3d 495, 501 (5th Cir. 2001); *see also Endres*, 349 F.3d at 925 (excusing some employees from undesirable tasks would create substantial costs for other employees as well as for the entity itself).  Noesen nevertheless insists that reassigning initial customer contact away from him to lower-paid technicians would

_____

[1]We note that the district court never considered whether MSN afforded Noesen a reasonable accommodation because the court concluded that he had not alleged a failure to accommodate claim against MSN.  Indeed, our review of the record reveals that he never developed a factual basis for his claim against MSN.  Likewise, in his brief to this court he did not explain how MSN failed to accommodate him.  Thus Noesen has waived his claim against MSN.  *See Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000) (explaining that failure to develop factual basis for argument results in waiver).

result in a more efficient use of pharmacy resources.   But even assuming that the technicians could promptly answer all incoming calls from customers and health professionals, the diversion of technicians from their assigned duties of data input and insurance verification would impose the undue cost of uncompleted data work on Wal-Mart.  Wal-Mart was under no obligation to rearrange staffing and incur such costs to accommodate an inflexible employee.  *See Endres*, 349 F.3d at 926; *Bruff*, 244 F.3d at 500.  Accordingly, the district court's grant of summary judgment in Wal-Mart's favor was proper.

Noesen next contends that the district court erroneously dismissed his claims against the State of Wisconsin because, he says, Title VII requires that Wisconsin enact a "conscience clause" exception to its codified standards of professional conduct allowing him to refuse to dispense birth control without facing disciplinary proceedings.  Thus, he says, the state was a party to Wal-Mart's Title VII violation.

Even though Noesen insists that § 2000e-7 establishes federal court jurisdiction over his claim against the State of Wisconsin, it does not.  The Eleventh Amendment bars federal jurisdiction over suits brought against states unless the state has consented to suit in federal court or Congress validly abrogated the state's immunity.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-99 (1984). Although Congress has abrogated states' immunity under Title VII, *Nanda v. Bd. of Tr. of Univ. of Ill.*, 303 F.3d 817, 828-31 (7th Cir. 2002), *cert. denied*, 539 U.S. 902 (2003), Title VII applies to states only in their capacity as employers, *see id.; Drake v. Minn. Mining & Mfg.* Co., 134 F.3d 878, 885 n.4 (7th Cir. 1998).  Here it is undisputed that the State of Wisconsin neither agreed to this suit in federal court nor employed Noesen during the events at issue in this suit.  The district court therefore was correct that it lacked jurisdiction over Noesen's Title VII claims against the State of Wisconsin and properly dismissed them.

                                                                                        AFFIRMED.