> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with
> Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 11, 2009[*]
Decided March 16, 2009

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 08-3626

| | |
|---|---|
| GARY C. LIZALEK, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| *v.* | |
| | No. 06-C-1109 |
| INVIVO CORPORATION and DAVID MOLYNEAUX, | |
| *Defendants-Appellees.* | Charles N. Clevert, Jr., *Judge.* |

**O R D E R**

Gary Lizalek's religious beliefs make for a complicated identity. As a matter of faith, he understands himself to be three separate beings: (1) GARY C LIZALEK, "a trust that was created by the Social Security Administration . . . to generate assets for its beneficiary, the United States Government"; (2) Gary C. Lizalek, Trustee; and (3) Gary C. Lizalek, Steward,

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2).

who "lends . . . consciousness and physical abilities to said Trust." His employer asked that he stick with a single identity for professional purposes, but Lizalek refused. Shortly thereafter he was terminated. The district court held that this decision broke no law, and we affirm.

In October 2005 Lizalek accepted a job with Invivo Corporation. Within days he sent a letter to Invivo, in his capacity as "steward," explaining that, "I have covenanted all of my time, talent, effort, energy, everything I have ever had and everything I will ever have to the building up of the Kingdom of God on Earth." Nevertheless, wrote Lizalek, "We see no conflict between said Covenant and the employment of GARY C LIZALEK [the trust] with Invivo Corp." Despite Lizalek's optimism, his employment did not go smoothly. Almost immediately employees began to complain about his "odd and problematic behavior." Additionally, his practice of alternating between identities in email correspondence raised concerns among his supervisors "about how his confusing and unprofessional writing style would be regarded" by Invivo customers. To further complicate things, he signed his W-4 as "Gary Lizalek, TTEE,"—evidently invoking his second identity—and claimed that he was exempt from any tax liability.

Over the next month David Molyneaux, Invivo's Vice President of Product Development, spent a great deal of time talking to Lizalek about these concerns and asked whether he could comply with corporate standards for professional communications. Lizalek's answer was essentially no, so Invivo terminated his employment by letter:

> This letter serves as notice of Invivo Corporation's decision to terminate your employment, effective immediately. This decision has not been made lightly, but results from your ongoing pattern of disruptive and uncooperative behavior demonstrated since the start of your employment . . . . In addition, your actions demonstrate that your judgment and communication skills are not consistent with the professionalism and skills sought by Invivo, and therefore, it does not appear that this is a good fit for either you or Invivo.

Lizalek then sued Invivo in federal district court, asserting that Invivo had violated various federal protections, only one of which warrants comment: Title VII's requirement that employers reasonably accommodate the religious beliefs and practices of employees. After considerable discovery the court granted summary judgment in favor of Invivo. With respect to the Title VII claim, the court wrote that "accommodating Lizalek's communication style and inaccurate employment forms would have created undue hardship." We review a grant of summary judgment de novo, construing all facts in the non-movant's favor. See *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). In this case, those facts come from Invivo's submission to the district court because Lizalek did not

properly dispute Invivo's proposed findings of fact under Local Rule 56.2. See *FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005); *Kunik v. Racine Co.*, 106 F.3d 168, 171, 174 (7th Cir. 1997).

Lizalek asserts that Invivo could have accommodated him without detriment or cost, but the uncontested facts demonstrate otherwise. Title VII requires that employers reasonably accommodate their employees' religious beliefs and practices unless doing so would present an undue hardship for the employer. See 42 U.S.C. § 2000e-2; *Reed v. Great Lakes Cos.*, 330 F.3d 931, 934-35 (7th Cir. 2003). The law does not, however, insist upon accommodation that would cause more than minimal hardship to the employer or other employees. See *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977); *Endres v. Ind. State Police*, 349 F.3d 922, 925 (7th Cir. 2003). The record here, meanwhile, attests to more than minimal hardship. Lizalek's writing style endangered Invivo's customer relationships and risked conflict with the Internal Revenue Service, co-workers had difficulty communicating with him, and Molyneaux devoted an inordinate amount of time to Lizalek's various requests. That is enough to support summary judgment.

One final note. Lizalek presses a retaliation claim as well given that Invivo notified him of his discharge a day after he filed an internal discrimination complaint. But there is no dispute that Invivo made its decision to fire Lizalek before the internal complaint arrived. (He just had not yet learned of the decision.) Accordingly, Invivo's actions cannot be retaliatory. See *Lewis v. City of Chi.*, 496 F.3d 645, 655 (7th Cir. 2007); *Burks v. Wis. Dept. of Trans.*, 464 F.3d 744, 758-59 (7th Cir. 2006).

AFFIRMED.