NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 16, 2009[*]
Decided April 28, 2009

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 08-2104

| | |
|---|---|
| KEVIN DENNIE ADAMS,<br>    *Plaintiff-Appellant*,<br><br>    *v.*<br><br>RETAIL VENTURES, INC.<br>    *Defendant-Appellee.* | Appeal from the United States District Court for the Southern District of Indiana, New Albany Division.<br><br>No. 4:06-cv-120-SEB-WGH<br><br>Sarah Evans Barker,<br>*Judge*. |

## O R D E R

Kevin Adams is a Christian who asserts that he must attend all services offered by his church every Wednesday night and Sunday. When his employer, Value City, would not guarantee that he would never have to work Wednesday nights or Sundays, Adams sued

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

Retail Ventures (doing business as Value City, the name that we use in this order), complaining of failure to accommodate his religion. Based on the hardship that such an accommodation would impose on Value City, the district court granted summary judgment to the defendant. We affirm.

Except where otherwise noted, the following facts are not in dispute. Adams attends a Church of Christ, which he describes as a "general Christian" church. His church offers services Wednesday evening, Sunday morning, and Sunday evening. Adams maintains that as a matter of faith he must be at church for all three weekly services. In late 2001 Value City hired Adams as a door greeter, and generally avoided scheduling him on Wednesday nights or Sundays. Twice the store did schedule him on one of those days, but once he traded shifts, and once he took a day off. Then, in January 2006, the store eliminated the door-greeter position. The manager, Martin Hardin, met with Adams to discuss two other positions: receiver/stocker and cashier, though Adams testified that Hardin did not actually offer him the cashier position. During their discussion about the scheduling demands of the new positions, Hardin told Adams that he could have occasional Wednesday nights and Sundays off to worship, but Hardin would not guarantee him time off every Wednesday night and Sunday. Based on how Value City scheduled its shifts for those positions, Adams always would have been able to attend at least one service per week. But without the guarantee of time off the job to attend all three weekly services, Adams never returned to work.

The record contains additional details about the new positions and Value City's scheduling needs. At the time Value City eliminated the door-greeter position, the company employed approximately ten cashiers and seven receivers. According to an uncontested affidavit from Rick Walker, Value City's vice president of store operations, the store scheduled most of the cashiers on most Sundays, but required all cashiers on certain Sundays—such as when there was a big sale. Additionally, weekend days are the most popular days off. Walker asserted that complying with Adams's scheduling demand would have forced Value City to alter the schedules of other cashiers and receivers. He concluded that accommodating Adams would have caused "a significant scheduling strain on Value City."

As is relevant here, Adams sued Value City for failure to accommodate his religious practices. Value City and Adams both moved for summary judgment. The court decided the failure-to-accommodate claim for Value City, explaining that Adams could not establish a prima facie case because his insistence on attending every service offered by his church was not a bona fide requirement of his religion, and that the alleged conflict between his schedule and his religious beliefs was illusory because any schedule would have allowed

him to attend at least one service per week. The court further concluded that Adams would have had a reasonable opportunity to worship had he accepted the job. In any event, the court continued, guaranteeing Adams Wednesday nights and Sundays off would impose an undue hardship on Value City.

On appeal Adams first points out that the order granting summary judgment to the defendants does not discuss Adams's own motion for summary judgment. But his two-page motion provided no supporting evidence, so it gave the court nothing to discuss. Adams also seems to contend that the court erred by granting Value City's motion for summary judgment without receiving a response from him, explaining that he did not receive Value City's motion. But after Value City moved for summary judgment, the court notified him of the consequences of failing to respond to the motion, and although he had three months to tell the court if he did not have the motion, he said nothing. He has thus forfeited that argument. *See Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp*, 495 F.3d 779, 783 (7th Cir. 2007). In any event, we have considered Adams's opposition to summary judgment as reflected in his brief on appeal and can decide this appeal on the merits. We review the grant of summary judgment de novo and will uphold it if there is no genuine issue of material fact and Value City is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007).

Title VII requires employers to make reasonable efforts to accommodate the religious practices of employees unless doing so would cause the employer undue hardship. *See* 42 U.S.C. § 2000e(j); *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 63 & n.1 (1986); *Reed v. Great Lakes Cos.*, 330 F.3d 931, 934 (7th Cir. 2003). To survive summary judgment, a plaintiff must submit triable evidence of a prima facie case of religious discrimination, meaning evidence that (1) his bona fide religious practice conflicts with an employment requirement, (2) he notified the employer of the practice, and (3) the practice was the basis for an adverse employment action. *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir. 1997); *EEOC v. United Parcel Serv.*, 94 F.3d 314, 317 (7th Cir. 1996). Here, the parties dispute the first prong of that test, but we can assume that Adams has made a prima facie case. The burden then shifts to the employer to show either that it reasonably accommodated the employee or that doing so would cause undue hardship, i.e., it would impose more than minimal hardship on the employer or other employees. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 81, 84 (1977); *Endres v. Ind. State Police*, 349 F.3d 922, 925 (7th Cir. 2003). Title VII does not require employers to deny the shift preferences of some employees in order to favor the religious needs of others. *See Hardison*, 432 U.S. at 81, 84; *Endres*, 349 F.3d at 925.

Value City has established that accommodating Adams's schedule would have caused the company undue hardship. Value City submitted uncontroverted evidence that on some Sundays (one of the two most popular days off) *all* cashiers must work because of customer demand during busy sales. When Value City needed its full roster of cashiers working, if it gave Adams the day off it would either be short a cashier, resulting in lost efficiency, or have to hire another one, incurring extra cost. *See Hardison*, 432 U.S. at 84. Furthermore, the company's uncontested affidavit explained that accommodating Adams's scheduling demand would have forced Value City to alter the schedules of other cashiers and receivers. Value City would have had to deny other employees their own shift preferences merely because the reasons for their requests were secular rather than religious, and that is a practice Title VII does not require of employers. *See id.* at 81, 84. As the affidavit concluded, accommodating Adams would impose a significant scheduling strain on the company. We agree that all of this adds up to more than minimal hardship on Value City and its other employees.

Adams's remaining contentions are meritless. He complains that the district judge should have "suppressed" his deposition because he was not given an opportunity to cross-examine himself, but Adams could have submitted an affidavit to clarify any answers. *See Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996). Next, Adams contends that the judge erred by declining to recuse herself for bias after sanctioning him for filing vexatious motions, but the judge's order sanctioning Adams did not display the sort of "deep-seated favoritism or antagonism" that would require recusal. *Liteky v. United States*, 510 U.S. 540, 554-55 (1994); *Grove Fresh Distribs., Inc. v. John Labatt, Ltd.*, 299 F.3d 635, 640 (7th Cir. 2002). Finally, Adams complains that the law firm representing Value City had a conflict of interest, but Adams forfeited this argument by failing to raise it in the district court. *See Local 15*, 495 F.3d at 783.

Accordingly, we AFFIRM the judgment of the district court.