# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Robinson v. Village of Oak Park, 2013 IL App (1st) 121220**

---

| | |
|---|---|
| Appellate Court Caption | SHAWNYA ROBINSON, Plaintiff-Appellant, v. THE VILLAGE OF OAK PARK, Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-12-1220 |
| Filed | April 16, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment was properly entered for defendant village in an action alleging that the village engaged in religious discrimination in violation of the Illinois Human Rights Act when it failed to accommodate plaintiff's beliefs as a Jehovah's Witness during a large-scale layoff process, since the village's offer of a position in the parking permits office was a "reasonable accommodation," and there was no showing defendant's behavior was contrary to its obligations under the Act. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-12881; the Hon. Raymond W. Mitchell, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Legal Assistance Foundation of Metropolitan Chicago, of Chicago (Timothy Huizenga and Sarah M. Baum, of counsel), for appellant.

Franczek Radelet, P.C., of Chicago (Michael A. Warner, Jr., Staci Ketay Rotman, and Mark S. Wilkinson, of counsel), for appellee.

Panel

JUSTICE QUINN delivered the judgment of the court, with opinion.

Presiding Justice Harris and Justice Simon concurred in the judgment and opinion.

**OPINION**

I. INTRODUCTION

Plaintiff, a Jehovah's Witness, is currently employed by the defendant, the Village of Oak Park, in its finance department. After plaintiff was laid off from her employment with the defendant, she filed a claim of religious discrimination with the Illinois Human Rights Commission (Commission), claiming she was fired because of her religion. After the Commission conducted its investigation into the allegation, it dismissed plaintiff's claim with its finding that there was no substantial evidence to support her claim. Plaintiff then sued her employer in the circuit court alleging religious discrimination in violation of the Illinois Human Rights Act (775 ILCS 5/1-101 through 10-103 (West 2010)) based on allegations that the defendant failed to accommodate plaintiff's religious beliefs during a large-scale layoff process which required placing employees, such as the plaintiff, into remaining available positions without violating the employees' rights under a governing collective bargaining agreement. The circuit court granted the defendant-employer's motion for summary judgment. This appeal by the plaintiff followed.

The Illinois Human Rights Act (775 ILCS 5/1-101 through 10-103 (West 2010)) prohibits an employer from discriminating against an individual on the basis of, among other things, his or her religious beliefs. If the employer can reasonably accommodate the individual's religious beliefs so he/she can perform the essential functions of the job without undue hardship or can otherwise fairly suggest a resolution to a potential conflict between an individual's performance and his or her religious beliefs, but did not do so, the employer can be liable under the Illinois Human Rights Act.

II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

A case is properly commenced under the Illinois Human Rights Act when an aggrieved party files a written charge within 180 days of the alleged violation with the Illinois Human Rights Commission. 775 ILCS 5/7A-102(A) (West 2010). The employer, in this case the

defendant, Village of Oak Park, must file its response to the charge and both parties may file position statements and other materials. 775 ILCS 5/7-102(B) (West 2010). The Commission then proceeds to independently investigate the factual basis of the charge to determine whether there is substantial evidence that a violation of the Illinois Human Rights Act has been committed. 775 ILCS 5/7-102(C) (West 2010). "Substantial evidence" is defined as "evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance" of evidence. 775 ILCS 5/7A-102(D)(2) (West 2010). Following its investigation, if the Commission finds that there is no substantial evidence that the Illinois Human Rights Act was violated, it must dismiss the charge. The aggrieved party's rights do not end there as he/she is given 90 days to either file a request for review with the Commission or file a complaint in Illinois circuit court, where he/she is now entitled to request a jury trial in the event her complaint and pleadings withstand procedural and substantive defenses. 775 ILCS 5/7A-102(C)(4), (K) (West 2010).

¶ 6        We ordered plaintiff to file the final administrative decision by the Illinois Human Rights Commission as a supplement to the record on appeal as critical dates were missing from the record. This information was necessary for us to perform an independent evaluation of the issue of jurisdiction, which includes whether plaintiff had timely exhausted all of her administrative remedies. Neither party filed the requisite jurisdictional statement as part of its appellate brief in compliance with Illinois Supreme Court Rule 341(h)(4)(ii) (eff. July 1, 2008). Illinois courts have consistently held that time limitations for bringing actions before administrative bodies are matters of jurisdiction that cannot be tolled. *Fredman Brothers Furniture Co. v. Department of Revenue*, 109 Ill. 2d 202, 209-10 (1985); *Robinson v. Illinois Human Rights Comm'n*, 201 Ill. App. 3d 722, 729 (1990) (requirement that the charge must be filed with Commission within 180 days after alleged violation occurred is jurisdictional and not subject to defense of tolling). Therefore, this court suggests that plaintiffs who exercise their right to file a circuit court case alleging a violation of the Illinois Human Rights Act attach a copy of the Illinois Human Rights Commission's final agency action to their circuit court complaint or otherwise allege sufficient facts with supporting dates in the body of the complaint sufficient to demonstrate that he/she did, in fact, timely exhaust all available administrative remedies at all stages.

¶ 7        The exhaustion of administrative remedies doctrine has long been a fundamental principle of administrative law and an aggrieved party ordinarily cannot seek review in the courts without first pursuing all administrative remedies. *Illinois Bell Telephone Co. v. Allphin*, 60 Ill. 2d 350, 357-58 (1975). This exhaustion requirement not only conserves valuable judicial time (*Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 308 (1989)) but allows a party to possibly succeed before the administrative body, making judicial review unnecessary (*Illinois Bell Telephone Co. v. Allphin*, 60 Ill. 2d 350 (1975)), and allows the administrative body with its particular expertise to fully develop and consider important facts (*id.*).

¶ 8        Our review has determined that plaintiff timely exhausted her administrative remedies and timely appealed the circuit court's grant of defendant's motion for summary judgment. Therefore, this court has jurisdiction to review this appeal.

¶ 9                                    III. BACKGROUND

¶ 10        In February 2005, the defendant hired the plaintiff. She was always covered by the International Association of Machinists and Aerospace Workers, District 8, collective bargaining agreement that the defendant had entered into with the union for Village of Oak Park (the Village) employees.

¶ 11        In 2007, the defendant, not unlike many Illinois municipalities at this time, began encountering financial problems including budget shortfalls, that caused the defendant to reduce the number of full-time employee positions. By December 2007, the defendant had laid off 53 full-time employees. Of those, 31 remain laid off and have not been called back to work. Plaintiff was laid off in September 2009 and was called back and is actively employed by the defendant.

¶ 12        In 2007, the defendant promoted the plaintiff to the position of community relations representative in defendant's community relations department. The defendant had promoted the plaintiff over a more senior (non-Jehovah's Witness) employee. There was significant union litigation surrounding defendant's promotion of the plaintiff into this position. The union filed a grievance on behalf of the nonselected employee alleging that the more senior employee should have been promoted. The defendant denied the union's claim. The claim was then scheduled for arbitration and defendant defended its selection of the plaintiff over the more senior employee during the course of a multiday union arbitration hearing. However, the arbitrator ruled in favor of the union and ordered that the more senior employee be placed in the position occupied by the plaintiff. Therefore, in September 2009, plaintiff was informed that her position was being eliminated as the defendant could not afford to have two community relations representatives. The 2009 arbitration decision and the terms of the governing collective bargaining agreement caused the plaintiff to be "bumped" from the position she held since 2007 by the more senior, incoming employee. This situation caused plaintiff to be faced with being laid off, but also gave plaintiff certain rights under the collective bargaining agreement to "bump" other employees with less seniority who held an equal or lower position, provided the plaintiff was qualified for the position.

¶ 13        Given plaintiff's low level of seniority as compared to other employees remaining on staff from the 2007 layoffs, together with plaintiff's limited qualifications and the provisions of the collective bargaining agreement, the defendant's human resource director identified a position where plaintiff could "bump" another employee and take over the position and remain employed.

¶ 14        The position was a senior administrative clerk position within the defendant's clerk's office. However, the plaintiff informed both the supervisor of the defendant's clerk's office and the human resource director that performance of some of the duties and responsibilities of senior administrative clerk within the clerk's office conflicted with her religious beliefs. Although the tenets of the Jehovah's Witnesses do not expressly prohibit their involvement in voting, plaintiff informed her supervisors that her own interpretation of the Bible prevents her from voting or becoming involved in elections. Plaintiff also stated that her religious beliefs prevented her from becoming a deputy voter registrar and she could not sign or administer oaths, both of which were required for this position. She was also religiously

prevented from being involved in the domestic partnership process made available to citizens through the defendant's clerk's office. The human resource director immediately identified a second position, also a senior administrative clerk position but located in the parking permits office. The salary, benefits and job classification of this second identified position were identical to the first one plaintiff was informed about. The plaintiff admitted that no accommodation for her religious beliefs would be necessary by the defendant for her to perform all of the duties and responsibilities of the second position as senior administrative clerk in the parking permits office. However, plaintiff decided not to bump the employee from the clerk's position in the parking permits office because she found the position personally not to her liking and instead decided to hold out for her preferred accommodation–the clerk's position in the defendant's clerk's office with a guarantee from the defendant that all duties that conflicted with her religious beliefs be reassigned to other employees. The defendant did not implement any religious accommodation for the plaintiff in the first position as it identified the second position for plaintiff within the Village employment where she could earn identical salary and benefits without being accommodated for her religious beliefs. Plaintiff's rejection of the clerk's position in the parking permits office caused her to be laid off.

¶ 15        Thereafter, plaintiff filed claims of religious discrimination and failure to accommodate her religion against her employer with the Illinois Human Rights Commission. The Commission conducted a thorough investigation into plaintiff's claims. On September 17, 2010, the Commission issued a notice of dismissal for lack of substantial evidence together with its 13-page single-spaced investigative report with Exhibits A through M attached. *In re Shawnya Robinson and Village of Oak Park*, Charge No. 2010 CF 0889; EEOC No. 21 BA 93434 (Sept. 17, 2010). Plaintiff timely filed her state court complaint on November 12, 2010.

¶ 16        Defendant in this case immediately filed a motion for summary judgment in the circuit court. The motion was fully briefed and orally argued. The circuit court ruled in favor of defendant, finding that there were no material facts in dispute and plaintiff had no viable claim against the defendant for any violation of the Illinois Human Rights Act. 775 ILCS 5/2-102 (West 2010).

¶ 17                                        V. ANALYSIS

¶ 18        There exists a dearth of Illinois case law on the issue of employment discrimination in the workplace and what constitutes a reasonable accommodation in instances where an employee's religious beliefs conflict with job duties since our legislature gave complaining plaintiffs appeal rights directly to the circuit court from a dismissal order entered by the Illinois Human Rights Commission due to a finding of no substantial evidence. Prior to August 2007, the Illinois Human Rights Act provided the Illinois Human Rights Commission with exclusive jurisdiction to adjudicate claims of civil rights violations, with appeals directly to the appellate court to review the Commission's actions under an arbitrary and capricious standard and for abuse of discretion. The Illinois statute was only recently amended to allow plaintiffs who are dissatisfied with the Human Rights Commission's

finding of no substantial evidence to support a charge the opportunity to file direct appeals of employment discrimination issues to the circuit courts (775 ILCS 5/7A-102(C) (4), (K) (West 2008); see Pub. Act 95-243, § 5 (eff. Jan. 1, 2008) (amending 775 ILCS 5/7A-102, 7A-103, 7B-102, 7B-103, 8-103, 8-110, 8-111 (West 2006))), which accounts for the lack of state appellate court decisions on this issue.

¶ 19    The Illinois Human Rights Act (775 ILCS 5/1-101 *et seq.* (West 2 010)) and the federal Title VII law (42 U.S.C. § 2000e *et seq.* (1982)) are similar in intent and therefore our supreme court has approved all Illinois courts to look to and rely upon federal Title VII law in interpreting and determining whether unlawful employment discrimination has occurred. *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178-79 (1989) (adoption of the same standards as claims brought pursuant to Title VII (42 U.S.C. § 2000e *et seq.* (1982)) when applying the Illinois Human Rights Act); see also *Turner v. Human Rights Comm'n*, 177 Ill. App. 3d 476, 487 (1988); *Atkins v. City of Chicago Comm'n on Human Relations ex rel. Lawrence*, 281 Ill. App. 3d 1066, 1074 (1996).


¶ 20                                    A. Standard of Review

¶ 21    A motion for summary judgment is frequently made in Title VII actions involving allegations of employment discrimination in federal court. Many times, summary judgment is granted because the defendant-employer can establish that there are no material facts in dispute and the employer is entitled to judgment as a matter of law. Plaintiffs must support their claims of discrimination with more than unsupported allegations at the summary judgment stage. A plaintiff's self-serving affidavit with an absence of evidence supporting these self-serving comments is usually insufficient to defeat a motion for summary judgment. *Hall v. Bodine Electric Co.*, 276 F.3d 345, 354 (7th Cir. 2002) ("It is well settled that conclusory allegations of self-serving affidavits, without support in the record, do not create triable issues of fact."); *Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 628 (7th Cir. 2006) ("Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment."); see generally 75 Am. Jur. 2d *Trials* §§ 81-84, 307-12 (2007). At the summary judgment stage, there must be a demonstration of more that a mere scintilla of evidence to support the elements of plaintiff's claim. There must be admissible evidence on which a fact finder could reasonably find for the plaintiff. Most discrimination cases in federal court are either settled or disposed of *via* defendant's motion for summary judgment. 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2732.3 (3d ed. 1998 & Supp. 2012).

¶ 22    We provide *de novo* review of a circuit court's ruling on a motion for summary judgment. *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 309 (2010). Summary judgment is proper where there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010); *Richardson v. Bond Drug Co. of Illinois*, 387 Ill. App. 3d 881, 884 (2009). The trial court may grant summary judgment based on the pleadings, admissions, depositions, exhibits and affidavits that are made a part of the record but must construe the evidence in a light favorable to the nonmoving party. *Id.*

¶ 23    Both plaintiff's administrative claim and circuit court complaint broadly contain claims of religious discrimination and a failure to accommodate her religious beliefs. Although these two claims are factually related, they are analytically distinct. *Venters v. City of Delphi*, 123 F.3d 956, 972 (7th Cir. 1997). We discuss each of plaintiff's claims, *seriatum*.

¶ 24                            B. Illinois Statutory Sections Involved

¶ 25    The parties rely on three sections of the Illinois Human Right Act, as follows:

"Civil Rights Violations–Employment. It is a civil rights violation:

(A) Employers. For any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status." 775 ILCS 5/2-102(A) (West 2010).

"General Definitions. When used in this Act, unless the context requires otherwise, the term:

* * *

(Q) Unlawful Discrimination. 'Unlawful Discrimination' means discrimination against a person because of his or her race, color, religion, national origin, ancestry, age, sex, marital status, order of protection status, disability, military status, sexual orientation, or unfavorable discharge from military service ***." 775 ILCS 5/1-103(Q) (West 2010).

"Definitions. The following definitions are applicable strictly in the context of this Article.

(F) Religion. 'Religion' with respect to employers includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 775 ILCS 5/2-101(F) (West 2010).

¶ 26    The parties have cited and relied on federal cases involving issues of employment discrimination due to the lack of Illinois cases on the topic.

¶ 27                            C. Religious Discrimination Claim

¶ 28    As a preliminary matter, an employee must demonstrate that a *bona fide* religious observance or practice conflicts with her employment. *Equal Employment Opportunity Comm'n v. United Parcel Service*, 94 F.3d 314, 317 (7th Cir. 1996). We hold that the term "religion" in the Illinois Human Rights Act includes all aspects of religious observance and practice, just as in Title VII. See 42 U.S.C. § 2000e(j) (2000). This court also recognizes that an employee's religious practice or belief need not be a compulsory one to be protected by the Illinois Human Rights Act. See *Redmond v. GAF Corp.*, 574 F.2d 897, 900 (7th Cir. 1978) ("[W]e do not feel the protection of Title VII is limited" to situations where "a practice specifically mandated or prohibited by a tenet of the plaintiff's religion is involved.").

Therefore, this court assumes that plaintiff's statement that duties surrounding voting for those Oak Park citizens who wish to exercise their right to vote and register within their voting district infringes on her ability to hold true to her religious beliefs despite the fact that such a belief is not held by others who practice the Jehovah Witness's tenets of beliefs. "A person's religion is not like his sex or race–something obvious at a glance. Even if he wears a religious symbol, such as a cross or a yarmulke, this may not pinpoint his particular beliefs *** and *** employers are not charged with detailed knowledge of the beliefs *** associated with particular sects." *Reed v. Great Lakes Cos.*, 330 F.3d 931, 935-36 (7th Cir. 2003). Therefore, we hold that it is incumbent upon the employee to inform his/her employer of his/her religious needs so that the employer has notice of the conflict. *Redmond v. GAF Corp.*, 574 F.2d 897, 902 (7th Cir. 1978). Plaintiff complied with this requirement and the defendant never challenged the sincerity of plaintiff's beliefs.

¶ 29    For plaintiff to establish her September 2009 layoff was the result of unlawful religious discrimination, she must demonstrate that the layoff was the result of her employer's animus toward her religious beliefs. *Id.* Plaintiff may do this using either the direct method of proof or the indirect burden-shifting method of proof. See *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008). Plaintiff never offered any direct evidence of religious discrimination or even circumstantial evidence that would suffice to make out a claim under the direct method of proof.

¶ 30    To survive summary judgment using the indirect method of proof, plaintiff must show that she was subjected to an adverse employment action, show that her job performance was satisfactory at the time the action was taken, and present some evidence to support an inference that the adverse action was taken because she did not hold or follow the religious beliefs of her superiors or held religious beliefs they found abhorrent. *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1169-70 (7th Cir. 1998). If plaintiff is successful at establishing a *prima facie* case, the burden shifts to the employer to set out a legitimate business reason for the action it took with respect to the plaintiff. *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 179-80 (1989); *Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005). Plaintiff must then show that the proffered business reason is not worthy of credence or by convincing the court that the more likely reason for the action was unlawful discrimination. *Id.*

¶ 31    While the plaintiff represented in her brief that "[i]t is undisputed that [plaintiff] has established a *prima facie* case for religious discrimination," the defendant takes issue with the plaintiff's ability to show any elements of her *prima facie* case. It submits that it took no adverse action against the plaintiff. The defendant implemented a union arbitration decision wherein it fought to keep plaintiff in her position. When plaintiff was "bumped" following the union arbitration decision, the defendant serially identified two positions plaintiff was qualified for and had the seniority to assume immediately. The first position was a clerk position in the Village clerk's office. When plaintiff stated that performance of some of the duties as a clerk in the clerk's office would conflict with her religious beliefs, a second position was immediately identified–a clerk's position in the parking permit office which provided plaintiff a salary and benefits identical to the first position. Plaintiff needed no accommodation for her religion in the parking permits office. However, this position was not to her liking as she stated it was her belief that the parking permits office was hectic and not

well run. She wanted and insisted on the first position with accommodation for her religion.

¶ 32　　We find that there is a fundamental problem with plaintiff's *prima facie* case. She has offered no evidence at all to support an inference that her employer's actions were taken because she did not hold or follow the religious beliefs of her supervisors or followed religious beliefs her supervisors found abhorrent. *Dickerson v. Board of Trustees of Community College District No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). As a result, there can be no presumption created that plaintiff's employer engaged in unlawful religious discrimination when plaintiff rejected the clerk's position in the parking permits office where no accommodation was required and, as a result of her rejection, was laid off. *Id.* The viability of plaintiff's claim of religious discrimination fails as she never identified a similarly situated employee who did not hold her religious beliefs who was treated more favorably than her, *i.e.*, someone who was accommodated in the position of his/her liking rather than taking the position where no accommodation was necessary for religious beliefs. She also did not provide any other circumstantial evidence that could lead any fact finder to a conclusion that the defendant engaged in unlawful religious discrimination. *Id.*; *Rhodes v. Illinois Department of Transportation*, 359 F.3d 498, 504 (7th Cir. 2004).

¶ 33　　Even if that were not the case, plaintiff's employer has set forth a legitimate business reason for its action: its compliance with the seniority rights of all employees under its contract with the union that represents the plaintiff and defendant's other employees. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 394 (2002) ("the seniority system will prevail in the run of cases"). Therefore, as to any claim of religious discrimination in violation of the Illinois Human Rights Act, the defendant is entitled to summary judgment in its favor.

¶ 34　　　　　　　　D. Allegation of Failure to Accommodate Claim

¶ 35　　The Illinois Human Rights Act requires employers to reasonably accommodate the religious beliefs of its employees, short of undue hardship. 775 ILCS 5/1-102, 2-101(F) (West 2010). This statutory provision is the same as the federal statute, Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e-2(a)(1) (2000).

¶ 36　　A claim by an employee of an employer's failure to accommodate religious beliefs must begin with a three-element *prima facie* showing by the employee of: (1) a religious practice or belief that conflicts with some employment requirement, (2) a communication by the employee to his/her employer of the need to observe this religious practice or belief, and (3) an adverse action taken by the employer toward the employee because of the employee's religious practice or belief. *Equal Employment Opportunity Comm'n v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir. 1997). If the employee can show these three things, the burden shifts to the employer to show either that a reasonable accommodation of the religious practice or belief was offered or that any accommodation of the plaintiff's practice or belief would result in undue hardship. *Id.*

¶ 37　　Undue hardship to an employer exists when a religious accommodation would cause more than minimal hardship to either the employer or other employees. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977); *Endres v. Indiana State Police*, 349 F.3d 922, 925 (7th Cir. 2003). We have serious concerns about plaintiff's contention that her

proposed accommodations for the clerk's job of her choice would not create an undue hardship to both the employer and the plaintiff's coworkers. Plaintiff would be the least senior clerk in the Village's clerk's office with the primary duties for handling all voter registration duties. Plaintiff is not a registered voter and cannot take any oath to become a deputy voter registrar. If plaintiff is not a deputy voter registrar, she cannot engage in any voter registration activities, including passing out or even handling voter registration and related documents. 10 ILCS 5/4-6.2, 4-8.03 (West 2010). If defendant were to relieve plaintiff of all counter and telephone duties involving voting and domestic partnership matters and shift her duties to other employees, this has the potential to violate the collective bargaining agreement. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 403 (2002) ("collectively bargained seniority trumps the need for reasonable accommodation"). Additionally, any accommodation that requires other employees to assume a disproportionate workload and divert them from their regular assigned duties is an undue hardship as a matter of law. *Bruff v. North Mississippi Health Services, Inc.*, 244 F.3d 495, 501 (5th Cir. 2001); *Endres v. Indiana State Police*, 349 F.3d 922, 925 (7th Cir. 2003) (excusing some employees from certain tasks would create substantial costs for both the employer and other employees).

¶ 38     Plaintiff argues that the defendant had an obligation to, at least, try out the accommodation that plaintiff was proposing in the clerk's office before declaring that her proposal would create an undue hardship. This is not the state of the law. An employer may establish undue hardship without putting a proposed accommodation into effect. *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1086 (6th Cir. 1987); *Favero v. Huntsville Independent School District*, 939 F. Supp. 1281, 1293-94 (S.D. Texas 1996).

¶ 39     In any event, undue hardship is not relevant in this case because the employer can show it offered the plaintiff a reasonable accommodation.

¶ 40     In the instant case, there can be no doubt that the defendant provided plaintiff with a reasonable accommodation in the form of a similar clerk's position with identical pay and benefits that did not conflict with plaintiff's religious beliefs in another office within the Village. Plaintiff admitted that working in this alternative position would not have compromised her religious beliefs, and thus, it removed all conflict between her religious beliefs and her employment requirements of communicating voting and domestic partnership information and assisting the public in obtaining voting rights to which they were entitled without her suffering any decrease in pay or benefits. To claim, as plaintiff has done in this case, that she has been denied freedom to practice her religious beliefs because she only wants to work in the precise clerk's position of her choice when working in an almost identical clerk's position would eliminate any conflict borders on the frivolous. A reasonable accommodation is defined as one that "eliminates the conflict between employment requirements and religious practices" and beliefs. *Ansonia Board of Education v. Philbrook*, 479 U.S. 60, 70 (1986); *Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 475 (7th Cir. 2001). The defendant was under no obligation to rearrange staffing and incur other costs to accommodate an inflexible employee. *Endres v. Indiana State Police*, 349 F.3d 922, 926 (7th Cir. 2003); *Bruff v. North Mississippi Health Services, Inc.*, 244 F.3d 495, 500 (5th Cir. 2001).

¶ 41     Plaintiff was not fired, as she alleges in her complaint and in her brief. The undisputed

evidence presented in the briefing on defendant's motion for summary judgment demonstrated that plaintiff affirmatively rejected the reasonable accommodation her employer provided, resulting in her layoff. As such, plaintiff's layoff was not the result of any adverse employment action taken against her by her employer, but her own action in failing to accept the reasonable accommodation provided to her by her employer. The defendant is not required to accept or even address any alternative measures for accommodation suggested by the employee once it has offered a reasonable accommodation. *Wright v. Runyon*, 2 F.3d 214, 217 (7th Cir. 1993). The law requires that an employer provide one reasonable option that will eliminate the conflict between the employee's job and religious beliefs. *Ansonia Board of Education v. Philbrook*, 479 U.S. 60, 70 (1986). It has long been the law that a reasonable accommodation of an employee's religious beliefs is not one which is supposed to satisfy the employee's "every desire." *Wright v. Runyon*, 2 F.3d 214, 217 (7th Cir. 1993). Not everything that makes an employee unhappy is an adverse action. An adverse action is one that the employer affirmatively takes that significantly alters the terms and conditions of the employee's job. *Stutler v. Illinois Department of Corrections*, 263 F.3d 698, 703 (7th Cir. 2001). Here, plaintiff chose to be laid off rather than accept the clerk's position in the parking permits office–a position she admitted did not conflict with her religious beliefs.

¶ 42    Summary judgment was appropriate in this case because the plaintiff acknowledged that the accommodation that the defendant offered to her in the form of a clerk's position in the parking permits office eliminated any conflict between her religious beliefs and the job duties. The defendant's offer in this case has been described as a "paradigm of 'reasonable accommodation.' " *Wright v. Runyon*, 2 F.3d 214, 217 (7th Cir. 1993); *Rodriguez v. City of Chicago*, 156 F.3d 771 (7th Cir. 1998).

¶ 43    Therefore, we hold that the circuit court's entry of summary judgment in favor of the defendant on plaintiff's failure to accommodate claim was warranted.

¶ 44                                    VI. CONCLUSION

¶ 45    Plaintiff has failed to show that her employer engaged in behavior contrary to its legal obligations under the Illinois Human Rights Act that would entitle her to move forward on her complaint. Based on the forgoing analysis, the circuit court's entry of judgment in favor of the defendant and against the plaintiff on defendant's motion for summary judgment is affirmed.

¶ 46    Affirmed.